UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN MASTERS,

                Petitioner,

    -against-                                      9:19-CV-0127 (LEK)

E. BELL, Superintendent,

                Respondent.

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

In October 2004, petitioner Steven Masters pled guilty to "a 10–count indictment with various violent felonies stemming from allegations that, in December 2003 and March 2004, he broke into two homes in Schenectady County and, among other things, sexually assaulted the female inhabitants." People v. Masters, 826 N.Y.S.2d 835, 836 (App. Div. 2007); see also Dkt. No. 1 ("Petition") at 1.[1] Petitioner is serving a forty-year sentence at Clinton Correctional Facility ("Clinton C. F."), in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"). Pet. at 1.

Petitioner seeks federal habeas relief pursuant to 28 U.S.C. § 2254. Pet.; see also Dkt. Nos. 1-3 ("Petitioner's Affidavit"); 1-4 to -9 ("Petition Exhibits").[2] He also has moved this court

---

[1] Except with respect to state court records (as explained further below), citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2] Because the Petition Exhibits are not clearly labeled, the Court will refer to Docket numbers when citing to those exhibits.

to allow discovery and to appoint an investigator, counsel, and an expert. Dkt. Nos. 13 ("July 2019 Motion"); 13-1 to -6 ("July 2019 Motion Exhibits").

For the reasons that follow, the Court dismisses the Petition and denies Petitioner's July 2019 Motion.

## II. PROCEDURAL HISTORY

### A. Direct Appeal

Petitioner has appealed his conviction and argued that he was entitled to relief because (1) his plea was involuntary and unknowing; (2) his counsel was constitutionally ineffective; and (3) his sentence was harsh and excessive. Masters, 826 N.Y.S.2d at 835–37. On January 4, 2007, the New York State Supreme Court, Appellate Division, Third Department affirmed the conviction holding that (1) Petitioner had not preserved a challenge to his plea because he had failed to move to vacate his plea, and, even if he had preserved such a challenge for review, the full colloquy established that the plea was knowing, voluntary, and intelligent; (2) Petitioner had also failed to preserve his claim of ineffective assistance of counsel, and, even if he had preserved that claim, it lacked merit; and (3) Petitioner's sentence was neither harsh nor excessive. Id. On March 13, 2007, the New York State Court of Appeals denied leave to appeal. Masters, 866 N.E.2d 461 (N.Y. 2017); see also Pet. at 2.

### B. 440 Motion

On November 21, 2017, Petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 ("440 Motion"). Dkt. Nos. 11-3 to -4 ("State Court Records" or "SCR") at 283–315 (motion and supporting memorandum of law); id. at 316–463

(supporting exhibits).³ Petitioner claimed he was entitled to relief because (1) his plea was involuntary, unknowing, and unintelligent; (2) his counsel was constitutionally ineffective for forfeiting viable defenses and advising petitioner to plead guilty; and (3) the trial court erred in failing to order a competency hearing pursuant to New York Criminal Procedure Law § 730.30. Id. at 480. On May 3, 2018, the Schenectady County Court denied the 440 Motion concluding that (1) Petitioner's challenge to his plea and his claim of ineffective assistance of council were already addressed by the Third Department on the merits and so must be dismissed; and (2) Petitioner's claim that the trial court erred in failing to order a competency hearing must be dismissed because Petitioner did not raise the claim on direct appeal. Id. at 481–82.

On June 18, 2018, Petitioner moved for leave to appeal the denial of his 440 Motion. Id. at 490–99. On June 29, 2018, the Third Department denied Petitioner's application for leave to appeal, id. at 503, and on September 21, 2018, the Court of Appeals dismissed Petitioner's application, id. at 515-16. Petitioner then filed a motion for reargument with the Court of Appeals, which the court denied on December 10, 2018. Id. at 517–26.

**C. The Petition and July 2019 Motion**

On January 31, 2019, Petitioner filed the Petition. Pet.

On March 8, 2019, the Court directed E. Bell ("Respondent") to answer the Petition. Dkt. No. 5 ("March 2019 Decision and Order").

---

³ The SCR were filed with Respondent's opposition to the Petition. Dkt. Nos. 11 ("Opposition to the Petition"); 11-1 ("Respondent's Memorandum"). Given the volume of court records, Respondent filed the SCR in two separate docket entries. Citations to the records refers to the page numbers listed at the bottom of the records.

On May 30, 2019, Petitioner filed a motion requesting discovery and the appointment of counsel and a private investigator. Dkt. No. 6 ("May 2019 Letter Motion"). This Court denied the May 2019 Letter Motion without prejudice to renew. Dkt. No. 10 ("June 2019 Decision and Order").

On July 8, 2019, Respondent opposed the Petition. Opp'n to the Pet. While Petitioner has not filed a reply to Respondent's Opposition to the Petition, he has renewed his motion for discovery and the appointment of counsel and investigator. July 2019 Mot.; July 2019 Mot. Exs.[4] He has also moved for the appointment of "any expert" to provide support for the arguments contained within his Petition. July 2019 Mot. at 1. Respondent has responded to the July 2019 Motion, Dkt. No. 15 ("Response to the July 2019 Motion"), to which Petitioner has replied, Dkt. No. 16 ("Reply in Support of the July 2019 Motion").

Petitioner contends that he is entitled to federal habeas relief because (1) he is actually innocent, Pet. at 5–6; (2) the judgment is invalid as he lacked competence to enter a knowing and voluntary plea, id. at 7–8; (3) the trial court erred in not ordering a competency hearing, id. at 8–10; and (4) his trial counsel was ineffective for (a) not requesting a competency evaluation, (b) allowing him to plead guilty while he was incompetent, and (c) forfeiting an insanity defense, id. at 10–11. A complete statement of Petitioner's claims may be found in the Petition and Petition Exhibits.

---

[4] Because the July 2019 Motion Exhibits are not clearly labeled, the Court will refer to Docket numbers when citing those exhibits.

## III. DISCUSSION

### A. Statute of Limitations Applying to the Petition

*1. Untimeliness of the Petition*

Respondent argues that the Petition is untimely and not entitled to statutory tolling. Opp'n to the Pet. at 8. The Court agrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state-court, criminal convictions. § 2244(d)(1). According to § 2244(d)(1):

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D).

The only provision applicable here is § 2244(d)(1)(A). The Court must therefore determine whether a state court has issued a final judgment and, if so, whether a year has elapsed between the issuance of the judgment and the date Petitioner filed his Petition.

A state conviction becomes "final" for the purposes of § 2244 when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. See Saunders v. Senkowski, 587 F.3d 543, 547 (2d Cir. 2009). The one-year limitations period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2); Saunders, 587 F.3d at 548. Thus, filing a 440 motion tolls the statute of limitations, which "remains tolled until either: (1) the time to seek leave to appeal from the denial of the CPL § 440 motion expires; or (2) the date the Appellate Division decides any motion for leave to appeal." Raucci v. Kirkpatrick, No. 16-CV-31, 2016 WL 204495, at *3 n.4 (N.D.N.Y. Jan. 15, 2016) (internal citations omitted). While the tolling provision "excludes time during which properly filed state relief applications are pending, [it] does not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).

Petitioner's conviction was affirmed by the Court of Appeals on March 13, 2007. Masters, 866 N.E.2d at 461. Accordingly, Petitioner's conviction became "final" for purposes of the AEDPA ninety days later, on June 11, 2007, when the time to seek certiorari expired. See Saunders, 587 F.3d at 547. Petitioner had one year from that date, or until June 11, 2008, to file a

timely federal habeas petition. The present Petition, whose attached cover letter was signed on January 28, 2019, is approximately ten years and seven months too late.

Furthermore, Petitioner's 440 Motion was filed nine years and five months after the statute of limitations terminated. An application for collateral relief cannot serve to "revive [an] expired statute of limitations." Gillard v. Sticht, No. 16-CV-513, 2017 WL 318848, at *3 (N.D.N.Y. Jan. 23, 2017) (citations omitted); accord Roberts v. Artus, No. 16-CV-2055, 2016 WL 2727112, at *2 (E.D.N.Y. May 5, 2016) ("If the 440 motion was filed after the one-year statute of limitations period expired, it cannot be counted for purposes of statutory tolling."). Hence, Petitioner's 440 Motion cannot bring Petitioner's claim back within the statute of limitations.

2. *Equitable Tolling*

AEDPA's one-year statute of limitations period is also "subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). To warrant equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (internal citations omitted); Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir. 2008).

Petitioner argues that he is entitled to equitable tolling by reasons of mental disease and defect. Specifically, Petitioner contends that his "memory pretty much [went] blank" from his arrest in 2004 through his gradual return to consciousness several years later and that once he "was off all meds by April of 2006," his "fear and ignorance of [his] situation paralyze[d] [him]." Pet.'s Aff. at 7–9.

7

As another court in this circuit has observed:

> The Second Circuit has held that "mental illness can warrant equitable tolling of a statute of limitations," though such claims are "highly case-specific." [Bolarinwa v. Williams, 593 F.3d 226, 232 (2d Cir. 2010)] (internal quotation marks omitted). The party seeking such tolling must provide "a particularized description of how [his] condition adversely affected [his[ capacity to function generally or in relationship to the pursuit of [his] rights." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). A court considering whether a mental impairment justifies equitable tolling should consider "all of the circumstances of the case." Canales v. Sullivan, 936 F.2d 755, 759 (2d Cir. 1991). A plaintiff seeking equitable tolling must demonstrate that [his] disability "severely impair[ed] [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." Bolarinwa, 593 F.3d at 232; see also Boos, 201 F.3d at 185 ("The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.").

Ganley v. City of New York, No. 15-CV-8077, 2016 WL 6496265, at *6 (S.D.N.Y. Nov. 1, 2016).

First, the record suggests that Petitioner does not have a mental impairment that permits equitably tolling his claims. For instance, while few in number, the mental health records that were provided from 2004 indicate that (1) he was alert and oriented to time, place, and person; (2) he was demonstrating clear and coherent speech; (3) his memory was good for remote and recent events; and (4) his prognosis for "major depressive disorder and personality disorder" was fair (assuming he complied with his medication). Dkt. No. 1-5 at 13; SCR at 118, 120–22, 344–49. Notes from a May 2, 2004 therapy session specifically indicate Petitioner's awareness of the charges against him and include an admission from Petitioner that he was a serial rapist who was in need of therapy and treatment. SCR at 123. And even if "fear and ignorance of [his] situation" could constitute mental impairments, Petitioner has not shown these impairments

8

"render[ed] him so incapable of rational thought that he could not appreciate his situation, or cause him to lack[ ] the wherewithal to ascertain that he must take legal steps." See Artis v. Hulihan, No. 09-CV-9893, 2012 WL 555149, at *4 (S.D.N.Y. Jan. 30, 2012) (alteration in original) (internal quotation marks omitted), report and recommendation adopted sub nom. Artis v. Hulihan, No. 09-CV-9893, 2012 WL 555699 (S.D.N.Y. Feb. 21, 2012).[5]

Moreover, even if Petitioner had mental impairments constituting extraordinary circumstances, he did not act diligently in pursuing his rights. Petitioner suggests his impairments passed once he regained his "courage" in 2012. See Pet.'s Aff. at 9. Thus, even assuming Petitioner's purported impairments had not ameliorated until 2012,[6] Petitioner still waited seven more years to file his Petition. Therefore, the Court concludes Petitioner did not act diligently in pursing his rights so that equitable tolling applies. See Rios v. Mazzuca, 78 F. App'x 742, 744 (2d Cir. 2003) (acknowledging that even though the petitioner "suffer[ed] from a chronic and sometimes debilitating mental illness . . . he [does not] have documentation that his mental

---

[5] Petitioner also asserts that he entered into an unlawful plea agreement after the "County Jail forcefully drugged [Petitioner] out of [his] mind, with heavy duty antipsychotics, that well exceeded maximum dosage limitations." Pet.'s Aff. at 5, 14–15; see also July 2019 Mot. at 19. He describes his memories as "foggy" since arriving at Clinton C. F., and he states that he is unsure whether they are real or not. Pet.'s Aff. at 7. Yet Petitioner has not provided details on when he was purportedly drugged or how the doping or his opaque memories affected his ability to timely file a habeas petition. Furthermore, Petitioner's claim that he lacked competence to enter a knowing and voluntary plea is undermined by the fact that, prior to his plea allocution, Petitioner's attorney withdrew a "Notice Pursuant to [Criminal Procedure Law] CPL 250.10" to "submit evidence of a mental disease or defect." SCR at 202, 229. Such notice was initially provided so that Petitioner could mount an affirmative defense against the criminal charges lodged against him, id. at 202, but Petitioner's attorney withdrew the Notice once he reviewed Petitioner's psychiatric records, id. at 229.

[6] An assumption that is further undermined by the fact Petitioner "was off all meds by April of 2006, which helped to clear the fog[.]" Pet.'s Aff. at 9; see also id. at 16.

9

illness kept him from acting with diligence throughout the many years that need be tolled for his petition to be timely.").

To the extent Petitioner's submissions could also be construed as asserting that equitable tolling applies to the period of time between 2012 and 2017 because a quarrel between Petitioner and his mother during those years equals an extraordinary circumstance, July 2019 Mot. at 2; Pet.'s Aff. at 9–10, such an argument is unavailing. Like Petitioner's "fear and ignorance of [his] situation," Pet.'s Aff. at 9, a family feud could not have rendered Petitioner "so incapable of rational thought that he could not appreciate his situation, or cause him to lack[ ] the wherewithal to ascertain that he must take legal steps." See Artis, 2012 WL 555149, at *4 (S.D.N.Y. Jan. 30, 2012).

Lastly, Petitioner contends that he was "dil[igently] . . . trying to obtain the evidence [he] would need in order to prove the issues to the court;" therefore, the time delay in filing his Petition should be excused through equitable tolling. July 2019 Mot. at 9. "If a prisoner believes he is entitled to discovery in aid of a state or federal collateral attack, his remedy is to seek such relief from the court where a properly filed and timely collateral attack on his conviction is pending." Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001). Thus, Petitioner could have tried to locate the evidence after a timely federal petition was filed. See id.; see also Davis v. McCoy, No. 00-CV-1681, 2000 WL 973752, at *2 (S.D.N.Y. July 14, 2000) (finding that a petitioner's inability to obtain necessary court papers for more than two years was not an extraordinary circumstance for the purposes of equitable tolling).

In sum, equitable tolling does not save Petitioner's untimely filing.

### 3. Actual Innocence

Even if a petitioner does not assert "an excuse for filing after the statute of imitations has run," an equitable exception to the one-year statute of limitations under § 2244(d)(1) exists in cases where a petitioner can prove actual innocence. McQuiggin v. Perkins, 569 U.S. 383, 386, 392 (2013). However, "tenable actual-innocence pleas are rare" and a petitioner must "persuade the district court that, in light of [] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 386 (citations and internal quotation marks omitted). "The standard's demand for evidence of innocence references factual innocence, not mere legal insufficiency." Hyman v. Brown, 927 F.3d 639, 657 (2d Cir. 2019) (internal quotation marks and citations omitted). To claim actual innocence, a petitioner must support his argument "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995); see also Rivas v. Fischer, 687 F.3d 514, 518 (2d Cir. 2012); Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003).

In support of his claim of actual innocence, Petitioner refers to multiple new sources of evidence. Relying on an affidavit from his mother, Sharon Davis, Petitioner first contends that he was with Davis at Mohegan Sun Casino in Connecticut between March 2 and March 3, 2004 (when the March 2004 sexual assault allegedly occurred). Pet.'s Aff. at 3; July 2019 Mot. at 13; Dkt. No. 1-4 at 2–9. Davis, however, produced her affidavit on October 10, 2018, which is fourteen years after Davis and Petitioner purportedly visited the Mohegan Sun. Dkt. No. 1-4. Because Petitioner "proffers this affidavit" eleven years "after [his] conviction became final, without any justifiable excuse or explanation[,] . . . the Court would find that [Petitioner] has

11

failed to meet the demanding burden of showing actual innocence . . . ." See Lewis v. Clarke, No. 13-CV-549, 2014 WL 2090563, at *6 (E.D. Va. May 19, 2014); see also McQuiggan, 569 U.S. at 399 (The "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" of credible evidence).

Second, Petitioner contends that there must be video footage, dated March 2, 2004, from one of the security cameras at Mohegan Sun, which would provide support for Petitioner's alibi that he was with his mother during the March 2004 assault. Pet.'s Aff. at 3; July 2019 Mot. at 13. Third, Petitioner argues that if an investigator were provided, the investigator could confirm Petitioner's "educated guess" that when the December 2003 assault occurred, Petitioner was either in Dallas, Texas or with his ex-girlfriend at his home. July 2019 Mot. at 8. These two pieces of proffered alibi evidence, however, are "speculative" and so cannot support an actual innocence claim. See Larsen v. Soto, 742 F.3d 1083, 1096 (9th Cir. 2013); Smith v. Warden, No. 18-CV-3166, 2018 WL 7435870, at *4 (6th Cir. Sept. 5, 2018).

Fourth, Petitioner states that one of the lab technicians who provided the DNA results supporting the charges against him "fabricat[ed] a fake lab report" and is ultimately "no longer with the lab due to his corrupt ways." Id. at 13. Despite Petitioner's conclusory and unsupported allegations that one crime technician was falsifying documents, the forensic reports at issue indicates that multiple technicians were responsible for the aforementioned findings, and that those findings were approved by the assistant director in each instance. See, e.g., Dkt. No. 13-5 at 6–8 (showing report for the March 2004 attack signed by Forensic Scientist Daniel Meyers and Assistant Director Julie Pizziketti); id. at 13–17 (showing report for December 2003 attack signed by Forensic Scientist Kevin Rafferty and Julie Pizziketti).

Finally, Petitioner asserts that the signature on his April 26, 2004 confession, which also supported the charges against him, is not consistent with his handwriting (a fact which Petitioner says that he informed his counsel about prior to the plea negotiations). Id. at 11; see also Pet.'s Aff. at 22. However, Petitioner's claim that a false confession was used against him is undermined by the cogent plea colloquy Plaintiff engaged in through which he admitted guilt for his crimes. SCR at 234–50. During the plea hearing, the court asked Petitioner, on two different occasions, if had adequate time to discuss the plea with his attorney—Petitioner agreed that he had. Id. at 235, 238. The court asked Petitioner four different times if he was of sound mind and ready to proceed—Petitioner indicated that he was. Id. at 234-235, 237–238. The court asked if Petitioner had been made any promises or coerced into the plea—Petitioner indicated he had not. Id. at 234. The court went through all of the different rights that Petitioner was giving up, at two separate times during the plea hearing, and Petitioner agreed that he understood and still wished to proceed. Id. at 236–37, 249–250. The court went through each count, in great detail, asking Petitioner if he in fact committed the actions required to be deemed guilty of the crimes asserted therein. Id. at 239–249. Petitioner responded that he was guilty, specifically acknowledging that he was entering dwellings of two women for the purpose of committing crimes inside, those crimes being attempts at or completed acts of sexual assault, sodomy, or other physical harm. Id. Petitioner also took the opportunity during his sentencing to beg for each victim's forgiveness and express his sorrow and regret for his actions. Id. at 262.

In sum, the totality of the evidence demonstrates that Petitioner repeatedly admitted to and apologized for committing the underlying acts of which he was accused. These statements were further bolstered by scientific DNA evidence which was collected and analyzed by a variety

13

of individuals. While no jury was impaneled because Petitioner pled guilty to a negotiated agreement and lesser sentence, to the extent such information had been presented to a jury, this Court finds that it is more likely than not that reasonable jurors would have found Petitioner guilty beyond a reasonable doubt. Accordingly, Petitioner's claims of actual innocence are insufficient and his Petition is time barred.[7]

### B. July 2019 Motion

Petitioner renews his motion for discovery and an investigator, claiming that both are necessary to uncover information that will provide him with alibis for the underlying crimes to which he pled guilty. July 2019 Mot.

Liberally construing Petitioner's motion, he is seeking permission to conduct further discovery to expand the record presently on review. "A habeas petition[er], unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). However, pursuant to Habeas Rules 6 and 7, a district court may order discovery or expansion of the record where a party demonstrates good cause. Good cause is demonstrated where the petitioner advances "specific allegations before the court [to] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief . . . ." Bracy, 520 U.S. at 909 (internal quotation marks

---

[7] Petitioner also asserts several other arguments concerning the legality of his arrest, subsequent searches and seizures, and his interrogation. Reply in Support of July 2019 Mot. at 1–2. Further, Petitioner asserts that he was arraigned illegally, placed before a grand jury and trial judge, and that his counsel mishandled the question of his competency to take a plea. Id. These arguments all are made in support of an actual innocence claim, but the arguments do not show Petitioner is "factually," as opposed to legally, innocent of the charges on which he was convicted. See Bousley v. United States, 523 U.S. 614, 623–24 (1998); Perez v. United States, 502 F. Supp. 2d 301, 306 (N.D.N.Y. 2006) ("To show actual innocence, a petitioner must prove that he is factually innocent, not by merely showing legal insufficiency.").

omitted). Similarly, a petitioner "may have a right to a court-appointed and state-funded criminal investigator, but that right does not accrue unless [the petitioner] can demonstrate need." Van Pelt v. Keane, No. 90-CV-2072, 1991 WL 81973, at *7 (E.D.N.Y. May 6, 1991) (citing Smith v. Enomoto, 615 F.2d 1251, 1252 (9th Cir. 1980)).

Given Petitioner's cogent plea and the DNA evidence linking Petitioner to the assaults, he has failed to show reason to believe that further factual development would entitle him to federal habeas relief. Therefore, his motion for discovery and the appointment of investigator is denied.

Petitioner also renews his motion for appointment of counsel. July 2019 Mot. There is no constitutional right to representation by counsel in habeas corpus proceedings. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). A court may, in its discretion, appoint counsel for "any financially eligible person" where "the interests of justice so require[.]" 18 U.S.C. § 3006A(a)(2)(B). In determining whether to appoint counsel, a habeas court

> should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge v. Police Officers, 802 F.2d 58, 61–62 (2d Cir. 1986); see also Soto v. Walker, No. 00-CV-197, 2005 WL 2260340, at *4 (N.D.N.Y. Sept. 15, 2005) (outlining the factors to "consider[:] the petitioner's likelihood of success on the merits of his petition, the complexity of

15

legal issues raised by such application and the petitioner's ability to investigate and present his case to the federal habeas court.").

For the aforementioned reasons, the Court has evaluated Petitioner's likelihood of success on the merits and determined that his Petition should be denied and dismissed. Accordingly, Petitioner's motion for appointment of counsel is also denied.

Finally, federal law provides for appointment of an expert in the same statute which allows for appointment of counsel. 18 U.S.C. § 3006A(e)(1); see also Jackson v. Conway, No. 05-CV-571, 2008 WL 850326, at *5 (W.D.N.Y. Mar. 28, 2008). However, it presumes that counsel has already been appointed before a request for an expert may be made. § 3006A(e)(1).

Here, the Court determined that appointing counsel is inappropriate because there is no likelihood of success on the merits. Consequently, Petitioner's motion to appoint an expert is denied.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED AND DISMISSED in its entirety**; and it is further

**ORDERED**, that Petitioner's motion for discovery and the appointment of an investigator, counsel, and expert (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[8] and it is further

**ORDERED**, that any further request for a COA must be addressed to the Second Circuit (Fed. R. App. P. 22(b)); and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order upon all parties in accordance with the Court's Local Rules.

**IT IS SO ORDERED.**

DATED:	March 24, 2020
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[8] Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); see Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).